In the Matter of the Application of HARRISON COSSAART, Appellant, for a Peremptory Mandamus Order against THE BOARD OF SUPERVISORS OF OTSEGO COUNTY, Respondent.

Third Department, January 17, 1924.

**Public officers — office of district superintendent of schools is not constitutional office — supervisors of towns in supervisory district having adopted resolution under Education Law, § 389, subd. 2, increasing salary of district superintendent, may rescind said resolution during his term of office — immaterial that supervisors of said towns did not petition board to levy tax to cover additional salary — peremptory order of mandamus granted requiring payment of additional salary to district superintendent to date of rescission of resolution.**

The office of district superintendent of schools is not a constitutional office and, therefore, the supervisors of the towns comprising a supervisory district, having duly adopted a resolution under subdivision 2 of section 389 of the Education Law increasing the salary of a district superintendent, may subsequently rescind said resolution during the term of office of the superintendent.

Said resolution having been duly adopted and a certificate having been filed with the board of supervisors showing such action, a valid obligation was created

until such action was rescinded, and, therefore, it is immaterial that the supervisors of the towns in the supervisory district did not petition the board to levy a tax to cover the additional salary.

Accordingly, a district superintendent of schools whose salary has been increased by resolution of the supervisors of the towns in the supervisory district is entitled to a peremptory order of mandamus requiring payment of the additional salary to the date of the rescission of the resolution.

HINMAN and VAN KIRK, JJ., dissent, with opinion.

APPEAL by the petitioner, Harrison Cossaart, from so much of a peremptory mandamus order of the Supreme Court, made at the Broome Special Term and entered in the office of the clerk of the county of Broome on the 25th day of July, 1923, as denies his application for a peremptory mandamus order requiring the payment to him of an increase or additional salary on and after January 13, 1923, to be raised by taxation upon the towns of Morris, New Lisbon, Butternuts and Laurens in the county of Otsego.

*Merritt Bridges* [*H. C. Stratton* of counsel], for the appellant.

*Dennis J. Kilkenny,* for the respondent.

Order, so far as appealed from, affirmed, with costs against the appellant, on the opinion of RHODES, J., at Special Term.

All concur, except HINMAN, J., dissenting, with an opinion, in which VAN KIRK, J., concurs.

The following is the opinion of the court below:

RHODES, J.:

This is an application for a peremptory mandamus order against the board of supervisors of Otsego county because of the failure of said board to cause to be levied a tax of $400 against the towns of Morris, New Lisbon, Butternuts and Laurens, said towns comprising the fifth supervisory school district of the county of Otsego, and said sum of $400 being the salary payable by said school district to the petitioner as district superintendent of schools.

Subdivision 1 of section 389 of the Education Law (as amd. by Laws of 1919, chap. 559) provides in substance that each district superintendent shall receive an annual salary from the State of $1,800, payable monthly by the Commissioner of Education from moneys appropriated therefor. Subdivision 2 of the same section (as amd. by Laws of 1910, chap. 607) provides in substance that the supervisors of the towns composing any supervisory district may by adopting a resolution by a majority vote increase the salary to be paid by such district to its district superintendent. Upon adopting such resolution such supervisors are required to file with the clerk of the board of supervisors a certificate showing the amount of such increase, and thereupon the board of supervisors

of each county is required to levy such amount by tax annually on the towns composing such supervisory district.

Pursuant to such authority and on the 2d day of November, 1918, the supervisors of the towns comprising said fifth supervisory district adopted a resolution fixing the salary payable by said district to the district superintendent at the sum of $400, and providing that said sum be an equal charge upon the towns comprising said district, and the required certificate showing the adoption of said resolution was duly filed with the clerk of the board of supervisors in the year 1918.

The petitioner was elected to said position in September, 1917, to fill the unexpired term of his predecessor who had resigned, and continued to hold said office until June, 1921, when he was re-elected for a full term of five years commencing August 1, 1921, and expiring July 31, 1926. Since the adoption of the resolution increasing his salary, the amount thereof has been levied and assessed by the board of supervisors for the years 1919, 1920, 1921 and 1922, and said sum has been paid to the petitioner.

During the time of the session of the board of supervisors of said county for the year 1922, three of the supervisors comprising said supervisory district met, apparently informally, and decided to discontinue said salary and notified the clerk of the board of supervisors of their decision. Later on and after the commencement of this proceeding, and on the 13th day of January, 1923, three of the supervisors comprising said district met and adopted a formal resolution in writing, rescinding and repealing the resolution establishing the petitioner's salary.

The principal question here presented is whether or not the petitioner's salary can lawfully be diminished or abolished during the term of his office. Section 1 of article 5 of the Constitution of the State of New York provides that the compensation of each of the officers therein specified shall not be increased or diminished during the term for which he shall be elected. The office of the petitioner, however, is not a constitutional office, but is entirely statutory. The compensation was salary, payable to him without regard to the amount of work which he performed, and was an incident of his office not based upon contract. (*Fitzsimmons* v. *City of Brooklyn*, 102 N. Y. 536.) The officers having authority to grant the salary, had authority to reduce the same during his term of office. In the case of *People* v. *Devlin* (33 N. Y. 269) the Legislature passed an act diminishing the compensation of the chamberlain of the city of New York, by reducing the amount of fees which he was entitled to withhold out of taxes collected by him. He retained the amount of fees to which he would have

been entitled by the law prior to the adoption of the act in question, claiming to be entitled thereto, and that the act depriving him thereof was illegal.   An action was brought against him by the Attorney-General to recover the same.   On appeal the court held that he was not entitled thereto and stated: "There is no constitutional objection to the power of the Legislature to regulate the compensation of county treasurers, or that of the chamberlain of the city and county of New York.   The same power has been before exercised by the Legislature.   (See Act of 1846, ch. 189.) The compensation may be increased or diminished in regard to future services, according to the legislative will.   The services for which compensation is claimed, in this case, were performed subsequent to the passage and taking effect of the act of the Legislature in question (if it be an act).   The holding of the office of chamberlain at a fixed compensation at the time of the passing an act, created no vested right in the incumbent to hold it, subject to the same compensation for the future portion of his term of office. The law under which he entered upon his duties is not a contract, express or implied, on the part of the State, that the same compensation will continue.   Nor is an act changing the compensation of such an officer an *ex post facto* law."

· It follows, therefore, that the supervisors of the four towns within the supervisory district had authority to abolish petitioner's salary.   Whether or not their attempted action in December, 1922, was sufficient, it is clear that on January 13, 1923, formal action was taken abolishing the salary.   As there is nothing in the resolution to indicate anything to the contrary, it of course became operative immediately upon its adoption, and petitioner's right to his salary thereupon ceased.   It appears that after the adoption of the resolution providing for the payment of petitioner's additional salary by the district, the supervisors of the towns comprising said district each year petitioned the board of supervisors to levy the amount thereof upon the towns in the district, and in the fall of 1922 the said four supervisors met and agreed that they would not petition the board of supervisors to levy such tax for the coming year.   It was not necessary for them to petition the board of supervisors to levy the tax in order to make it the duty of such board so to do.   Having adopted the resolution providing for the payment by the district of petitioner's salary, and having filed a certificate with the clerk of the board of supervisors showing such action, nothing further remained to be done to make it a valid obligation from year to year until such action was rescinded.   Therefore, the failure of the four supervisors to petition the board did not terminate liability for the payment of petitioner's salary and did not

terminate his right thereto. Inasmuch as the petitioner has not been paid his salary to the date of January 13, 1923, he is entitled thereto, and the petitioner is entitled to a peremptory mandamus order as sought for in his petition, to the end that provision be made for the payment of the amount of his salary due to January 13, 1923, together with interest and costs of this proceeding.

The prayer of the petitioner to the extent.indicated herein is hereby granted, with costs of his motion therefor.

HINMAN, J. (dissenting):

There is a question in this case which disturbs me and which does not seem to have been passed upon expressly by Mr. Justice RHODES at the Special Term. The statute (Education Law, § 389, subd. 2, as amd. by Laws of 1910, chap. 607) provides: " The supervisors of the towns composing any supervisory district may by adopting a resolution by a majority vote increase the salary to be paid by such district to its district superintendent. Such supervisors must thereupon file with the clerk of the board of supervisors a certificate showing the amount of such increase. The board of supervisors of each county shall levy such amount annually by tax on the towns composing such supervisory district within the county." This statute makes no provision for a rescission of a resolution granting an additional salary.

Counsel for the respondent urges that the. negative is implied and that if it were not implied the supervisors of the district would have ample authority under the common law to rescind, repeal and nullify any action taken by them, citing as his authority *People ex rel. Hatzel* v. *Hall* (80 N. Y. 117, 124), wherein it was said: " ' It is a maxim in the common law, that a statute made in the affirmative, without any negative expressed or implied, doth not take away the common law.' " The court was there dealing, however, with the jurisdiction of the Supreme Court. The same rule would apply to any municipal corporation, body or officer which had powers at the common law. We are here dealing, however, with a purely statutory body which in 1910 was constituted for the ·first time. The supervisors of certain towns, composing a supervisory district under the Education Law, were given a specific power which they had never had before. Certainly such a body created by statute had no rights at the common law to be retained under the maxim quoted in *People ex rel. Hatzel* v. *Hall* (*supra*). Moreover, the maxim *expressio unius est exclusio alterius* " is applicable to a statutory provision which grants originally a power or right. In such case the power or right originates with the statute, and exists only to the extent plainly granted." (2

Lewis' Suth. Stat. Const. [2d ed.] § 491.) In the same work on statutory construction (§ 551), it is said that " Acts for the incorporation of municipal corporations and grants of power therein are to be strictly construed. And such corporations possess only such powers as are expressly conferred or necessarily implied. The same rule applies to counties and other quasi public corporations. Doubts as to the existence of a power are resolved against the corporation." These supervisors in a supervisory district were not even made a body corporate by the statute. (Education Law, § 389, subd. 2.) They were merely authorized to adopt a resolution by a majority vote increasing the salary to be paid by their district to their district superintendent. When a certificate of their action had been filed with the clerk of the board of supervisors that board was required to levy the necessary amount " annually " by tax on the towns composing the district. Clearly the statute contemplated but one action by these supervisors and it was not contemplated that their action should be repeated annually. It is my opinion that the statute authorized one increase in salary by action of these supervisors and that the power of the supervisors was then exhausted. " It is a delegated power which should not be extended by construction, implication or doubtful inference." (*Cox* v. *Mayor, etc.*, 103 N. Y. 519, 523.) Resort should be had to legislation if further power ought to be lodged in these supervisors of a supervisory district to rescind or otherwise modify the salaries previously fixed. Since the order below has been affirmed upon the theory that the supervisors of the district in question had the implied power to rescind, to which I cannot agree, I dissent and vote for a reversal.

VAN KIRK, J., concurs.